UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUNCAN GALVANIZING CORPORATION, individually and on behalf of all those similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>THE LONDON METAL EXCHANGE LIMITED, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 14-CV-3728-KBF |
| OKLAHOMA STEEL AND WIRE CO., INC., IOWA STEEL AND WRIE CO. and SOUTHWESTERN WIRE, INC., individually and on behalf of all those similarly situated,<br><br>　　　　　　Plaintiff<br><br>　vs.<br><br>GLENCORE XSTRATA, PLC, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 14-CV-4290-KBF |
| GALVANIZERS COMPANY, individually and on behalf of all those similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>LONDON METAL EXCHANGE LIMITED, et al.<br><br>　　　　　　Defendants. | Civil Action No. 14-CV-5066-KBF |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT
GOLD BENNETT CERA & SIDENER LLP AS AN INTERIM
CO-LEAD COUNSEL FOR THE PROPOSED CLASS**

Plaintiff Galvanizers Company respectfully submits this memorandum in support of its motion to appoint Gold Bennett Cera & Sidener LLP ("GBCS") as one of the Interim Co-Lead Counsel to lead this litigation on behalf of the proposed Class.[1]

## INTRODUCTION

This complex antitrust litigation brought on behalf of a nationwide class of direct purchasers of zinc calls for the appointment of interim co-lead counsel. GBCS should be one of those counsel. The firm, which for decades has had a successful nationwide practice in complex antitrust and securities class actions on behalf of plaintiffs, will bring its skills and resources to bear to efficiently and effectively prosecute these cases in conjunction with the talents and resources of other firms as may be appointed by the Court.

GBCS has extensive and wide-ranging experience litigating complex antitrust class actions and will dedicate experienced and respected lawyers to jointly litigate this case. The firm has in the past, and is in some instances presently, working with all of the other plaintiffs' firms in the related *Duncan Galvanizing* and *Oklahoma Steel* cases, and will be a valuable member of any co-lead counsel team appointed by the Court. Indeed, GBCS believes that a multi-firm co-lead structure is called for in this large, complex case. Such a structure will provide a strong pool of experienced firms and lawyers who can effectively work together to bring the best possible result for Plaintiffs and the proposed Class.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation challenges an alleged conspiracy commencing in 2010 and continuing to the present whereby the defendants agreed to unlawfully restrain zinc supplies and inflate

---

[1] As an initial matter, GBCS believes that consolidation of the three pending cases pursuant to Rule 42(a), Fed. R. Civ. P. is appropriate in that the cases present a "common question of law or fact." *See Primavera Familienstiftung v. Askin* (S.D.N.Y. 1997) 173 F.R.D. 115, 129 ("A district court has broad discretion to consolidate actions.")

relevant premiums associated with the purchase of zinc, thereby causing damage to purchasers of zinc for physical delivery in the United States.

Specifically, in 2010, defendants Goldman Sachs Group, Inc., JPMorgan Chase & Company, Glencore Xstrata plc and other alleged co-conspirators collectively acquired the majority of global metals warehouses authorized by the defendant London Metal Exchange Ltd. ("LME") to store zinc and other commodity metals traded on the LME. These Defendants are alleged to have conspired to manipulate global warehouse supplies of zinc through numerous anticompetitive means, in concert with the LME, a purported private rulemaking and price setting organization, which Defendants are alleged to have used to implement their unlawful plan. By controlling flows of zinc into and out of LME warehouses, Defendants were able to control premiums charged to all purchasers of zinc in the relevant market.

Based on their control of LME warehouses, Defendants were able to restrain trade in zinc warehousing by creating artificial queues for zinc in LME warehouses, earning inflated warehousing rents, and profitably trading financial instruments based on zinc prices (such as zinc futures). LME warehouses in and around New Orleans, Louisiana, which are controlled principally by defendant Glencore through its warehousing affiliate defendant Pacorini Metals USA, LLC, house the majority of zinc available in the United States. Other LME warehouses controlled by the Defendants also store zinc.

By restricting the amount of zinc exiting LME warehouses Defendants reaped financial benefits in that, as LME warehouse owners, they were able to charge storage fees (rents) over a longer period of time as the zinc waited to be shipped out, artificially driving up storage costs. These artificial storage costs raise zinc premiums paid by Plaintiff and the proposed Class, as the

premiums are intended to reflect the logistical cost of storing and moving metal from LME warehouses.

The Platts Zinc Special High Grade Premium, which historically has been intended to reflect the total logistical cost of delivering metals, plays a critical role in determining the price of zinc for physical delivery, as purchasers such as plaintiff Galvanizers Company pay the underlying "spot" price of the metal plus the associated premiums.

Plaintiffs allege that zinc premiums have been inflated by artificial LME warehouse delays which were created by the Defendants' anticompetitive conduct. Defendants' alleged conspiracy to monopolize and restrain trade in zinc stored in LME warehouses directly caused anticompetitive price effects in the market for the sale of zinc in the United States in violation of Sections 1 and 2 of the Sherman Act and Sections 4 and 16 of the Clayton Antitrust Act. Numerous regulatory authorities in the United States and throughout the world are investigating the practices which form the basis for the allegations of the complaints on file.

## **PLAINTIFF GALVANIZERS COMPANY**

Plaintiff Galvanizers Company ("Galvanizers") is a privately held company organized under the laws of Oregon. Galvanizers has been in the metal finishing business since 1941. From its facility in Portland, Oregon, Galvanizers provides cleaning and application of zinc coating services to steel owned by its customers. From the beginning of the Class Period to the present, Galvanizers purchased millions of dollars of 99.99% high grade or special high grade zinc for physical delivery to its Portland facility. Galvanizers paid LME-based prices for its zinc purchases during the Class Period, which was the official average LME cash settlement price for zinc for the month of shipment, plus a market premium for every pound purchased.

**STANDARDS APPLICABLE TO APPOINTMENT OF INTERIM CLASS COUNSEL**

Fed. R. Civ. P. 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See also Allen v. Stewart Title Guar. Co.*, 246 F.R.D. 218, 219 (E.D. Pa. 2007). Similarly, the Manual for Complex Litigation (Fourth) ("Manual") recommends that the court select and authorize one or more attorneys to act on behalf of other counsel and their clients early in complex litigation. Counsel so designated "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel." *Manual* § 10.22. *See also In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (describing appointment of interim lead counsel as "essential for efficient case management").

Although neither Rule 23(g) nor the Advisory Committee Notes explicitly define the standards for appointing *interim* class counsel, courts have held that the factors set forth in Rule 23(g) should be considered in this context. *See, e.g., In re Bear Stearns Cos., Inc. Sec., Derivative, and Employee Retirement Income Sec. Act Litig.*, MDL No. 1963, 2008 U.S. Dist. LEXIS 106327, at *36 (S.D.N.Y. Jan. 5, 2009) (explaining that it is "generally accepted that the considerations set out in Rule 23(g)(1)(A), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification") (*quoting In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. at 57); *Waudby v. Verizon Wireless Servs., Inc.*, 248 F.R.D. 173, 175-76 (D.N.J. 2008). Rule 23(g)(1)(A) provides that in appointing class counsel, a court "must consider" these factors:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action;

4

- counsel's knowledge of the applicable law;
- the resources counsel will commit to representing the class.

Rule 23(g)(1)(B) further provides that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." As set forth below, these factors support appointment of GBCS as an interim co-lead counsel in these cases.

### A.    Rule 23(g)(1)(A)(i)

GBCS was only very recently retained by its client, Galvanizers, to pursue the claims at issue in this litigation. However, by virtue of its position on the Executive Committee of counsel in the *Aluminum Warehousing Antitrust Litigation,* MDL No. 2481, also pending before this Court, GBCS is very familiar with the investigations and public information regarding the alleged manipulation of warehouses for the purpose of restraining supplies and inflating premiums associated with several commodities, including aluminum and zinc. The allegations of the complaints on file in the zinc matter are substantially similar and are based on public information. Because of the extreme dearth of time between GBCS's retention and the firm's awareness of the Court's June 24, 2014 Order requiring the filing of motions to appoint lead plaintiff and lead counsel by July 9, in the *Galvanizers Company* complaint, GBCS has admittedly not added any significant new detail to the previously filed complaints. Nonetheless, inasmuch as these actions are based on widely available public information, this factor should not weigh against GBCS's appointment as an interim co-lead counsel.

### B.    Rule 23(g)(1)(A)(ii)

For more than 40 years, GBCS, based in San Francisco, has represented plaintiffs in complex antitrust and securities class action litigation. *See In re Memorex Security Cases*, 61

5

F.R.D. 88 (N.D. Cal. 1973).[2]  Recently, in 2013, GBCS obtained one of the largest antitrust class action recoveries in the nation during the year.  Specifically, GBCS initiated on its own, and was co-lead counsel in, an antitrust price-fixing class action that settled for $163.5 million on the eve of trial, and that was finally approved by the Court in an order praising the significant result obtained.  *In re Titanium Dioxide Antitrust Litig.*, Case No. 10-cv-00318 RDB (D. Md.), 2013 WL 5182093 at *4 (D. Md. Sep. 12, 2013).[3]  GBCS investigated, developed, and initiated the *Titanium Dioxide* case on its own, without the assistance of any governmental investigation.  Attorney Solomon B. Cera led the team of GBCS attorneys working on the case.  Mr. Cera will be the firm attorney who will be primarily responsible for working on this matter on behalf of GBCS.  The resounding success of the *Titanium Dioxide* case against some of the most prestigious and skilled firms in the nation, including Cravath, Swaine & Moore, Arnold & Porter, Crowell & Moring, and Vinson & Elkins, is reflected in the comments of the Honorable Richard D. Bennett of the United States District Court for the District of Maryland:

> And Mr. Cera has aptly noted the high quality with great pride of the plaintiffs' trial team. The defense team has not been so free to perhaps boast of its own abilities, but there was outstanding legal representation on the defense side of the aisle here as well.
>
> And I might only have one law clerk in here now, on more than one occasion, you may have noticed quite a few law clerks and interns, not just from here to my left, but also in the courtroom, who were watching the outstanding lawyering that went on here.
>
> And I would be remiss if I didn't really comment upon the extraordinarily high level of professionalism that I found attended to these cases, that you make us all proud to be part of this profession in terms of quality of your representation. I mean that sincerely as to all of you.

---

[2]  The Firm's predecessors have also been known as David B. Gold, A Professional Law Corporation, Gold & Bennett LLP, and Gold Bennett & Cera LLP.

[3]  *See also In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328 (D. Md. 2012) (certifying class and appointing GBCS as co-lead counsel).

> And on more than one occasion, I've been accused of having a hot bench where I will question lawyers, that's true, because I believe that's why you have hearings, to ask questions. And I will tell you on more than one occasion on both sides of the aisle, I found myself being turned around by outstanding advocacy where I thought I understood where I was going on an issue and in fact didn't go where I was going to, that's the mark of outstanding lawyers.
>
> With all the level of cynicism at times as to our profession, of the frustration and sitting in rooms, and particularly younger lawyers here going through billions of documents and document review and discovery, there's still a place here for outstanding advocacy.
>
> And you all, all of you have exemplified, from my own personal point of view, it was a pleasure to preside over this case and see the quality of the lawyering I saw on both sides of the aisle. So you present the best of our profession . . .[4]

Thus, GBCS has extensive experience in class action antitrust litigation such as the instant case. In addition to the *Titanium Dioxide* matter, the firm has been co-lead counsel in many other significant antitrust cases resulting in substantial recoveries for the classes it has represented. *See, e.g., In re Rubber Chemicals Antitrust Litig.,* MDL No. C-04-1648 (N.D. Cal.) ($320 million recovery);[5] *In re Methionine Antitrust Litig.,* MDL No. 00-1311 (N.D. Cal.) ($107 million); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,* No. 03md1542 (D. Conn.) ($99.3 million); *In re Polyester Staple Antitrust Litig.*, MDL No. 03CV1516 (W.D.N.C.) ($63.5 million).

GBCS has played a significant role in other complex litigation in a multitude of class actions over its history as evidenced in scores of published decisions over the past four decades.[6]

---

[4] *See* Exhibit A to the Declaration of Solomon B. Cera ("Cera Decl.") at 36:12 – 37:19, filed herewith.

[5] *See In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal. 2005) (finding that "it is undisputed that the counsel selected by the named plaintiffs have extensive experience and expertise in antitrust and other class actions, as well as other complex litigation, and have successfully prosecuted such cases in courts across the country" approving GBCS as class counsel in price fixing class action).

[6] *See* the Firm Resume of GBCS attached as Exhibit B to the Cera Decl.

During this time, these cases have resulted in substantial recoveries for the Firm's clients and have established some of the basic principles for handling complex litigation. *See, e.g., Matrix Capital Management Fund, L.P. v. BearingPoint, Inc.,* 576 F.3d 172 (4th Cir. 2009) (reversing improper denial of Rule 15(a) motion to amend); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir. 2003) (setting forth Ninth Circuit amendment standards in PSLRA cases); *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000) (establishing standing for aftermarket purchasers under Section 11 of the Securities Act of 1933).

In addition, GBCS has successfully prosecuted many complex class actions following appointment as lead or co-lead counsel under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 *et seq*. E.g., *In re Tronox, Inc. Sec. Litig.*, No. 09-6220 (S.D.N.Y) ($37 million in 2012); *In re Peregrine Systems, Inc. Sec. Litig.,* No. 02-870 (S.D. Cal) ($117 million in 2009); *In re Sonus Networks, Inc. Sec. Litig*., No. 04-10294 (D. Mass.) ($40 million in 2008); *In re BearingPoint, Inc. Sec. Litig. II*, No. 05-00454 (E.D. Va.) ($7.5 million in 2010 after company filed chapter 11 bankruptcy).

Courts have repeatedly praised GBCS's work.  For example, in commenting on the Firm's representation of the class in a securities fraud class action, the then Chief Judge of the United States District Court for the Northern District of California, the Honorable Thelton E. Henderson, stated as follows:

> [T]his action has been extraordinarily complex, resulting in over 300 orders by this court, several of which have been published, and many of which addressed difficult issues of first impression, and were eventually published . . . [T]hroughout this action, class counsel has demonstrated superior legal abilities, and has submitted to the court briefs, memoranda and oral argument of the highest quality . . . [C]ounsel's efforts have conferred substantial benefits on the class.

*Roberts v. Heim*, Case No. C 84-8069 TEH, 1991 WL 427888 at *6 (N.D. Cal. August 28, 1991).

Similarly, another court stated:

8

> Having thus initially expressed our confidence in [GBCS's] abilities, the Court has not since been disappointed. On the contrary, [GBCS] have shown themselves to be attorneys of the highest caliber, at all times prosecuting this action with a high degree of skill and professionalism.

*In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 515 (W.D. Pa. 2003).

In summary, the Court can be assured that GBCS will provide the highest quality representation for the Class.

### C.      Rule 23(g)(1)(A)(iii)

Based on the foregoing discussion of GBCS's vast experience and successful prosecution of complex class action cases, there can be no doubt that GBCS attorneys possess the requisite knowledge of the law such that the Class will receive superior representation by virtue of the firm's presence as a co-lead counsel.

### D.      Rule 23(g)(1)(A)(iv)

GBCS is ready, willing, and able to commit the resources necessary as part of a team of co-lead counsel to successfully prosecute this litigation in the best interests of the Class. The firm has a history of litigating its cases aggressively, efficiently, and effectively so as to maximize the recoveries to its clients. All necessary resources have been and will continue to be committed to the firm's cases, in terms of both money and professional time.

## **CONCLUSION**

GBCS has achieved excellent results in the past in antitrust litigation of this type and is committed to providing the resources required to prosecute this litigation through all phases. For the reasons set forth herein, GBCS should be appointed an interim co-lead class counsel.

Dated: July 9, 2014                     Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL, PLLC**

By:      /s/ Michael Eisenkraft
Michael Eisenkraft
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-0177
Email: meisenkraft@cohenmilstein.com

Manuel John Dominguez
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel: (561) 833-6575
Email: dominguez@cohenmilstein.com

– and –

**GOLD BENNETT CERA & SIDENER LLP**
Solomon B. Cera (*pro hac vice* forthcoming)
C. Andrew Dirksen (*pro hac vice* forthcoming)
Pamela A. Markert (*pro hac vice* forthcoming)
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@gbcslaw.com
Email: cdirksen@gbcslaw.com
Email: pmarkert@gbcslaw.com

Attorneys for Plaintiff Galvanizers Company
and the Proposed Class